IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 04-25-GPM |
| | ) |
| MICKEY OWEN and LESLIE FOOTE, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

The issue before the Court is whether Plaintiff's claims against the remaining two defendants, Mickey Owen and Leslie Foote,[1] are barred by the doctrine of qualified immunity. If so, Defendants are entitled to summary judgment.

This is a sad case about an abused little girl who told the authorities her mother's friend, Plaintiff James Boyd, was the one who inflicted bruises on her – at least on one occasion in question. Boyd was a police officer, and the indicated finding by the Illinois Department of Children and Family Services ("DCFS") caused him difficulties in his career.[2]

---

[1]The Court notes that the second amended complaint (Doc. 69) names Mickey Owens and Leslie Foote as defendants. According to the documents before the Court, however, the correct name for the former defendant is Mickey Owen. The Court refers to him herein as Mickey Owen and directs the Clerk's Office to change his name on the docket sheet upon entry of this Memorandum and Order. Although Defendant Foote is referred to throughout the exhibits as Leslie Foott and Leslie Foote, the Court is unable to discern the correct spelling of her name and, therefore, leaves it as set forth in the second amended complaint.

[2]There are many factual disputes about what exactly those difficulties were – but resolution of this issue is not necessary when it comes to the question of qualified immunity.

Boyd initially sued Mary Free, Phoenix Crisis Center, Rebecca Osborne, Cindy McNamara, Bryan Samuels, DCFS, Mickey Owen, Peggy Law, and Leslie Foote. Free and Phoenix Crisis Center were dismissed pursuant to a motion for summary judgment by Order dated May 19, 2004. (*See* Doc. 34.) Osborne and Samuels were dismissed on February 10, 2005, when the amended complaint failed to name them as Defendants. (*See* Doc. 69.) DCFS was dismissed by Order dated March 28, 2005, when the Court granted the instant motion for summary judgment in part, finding that DCFS was entitled to Eleventh Amendment immunity on Boyd's claims for damages. (*See* Minute Entry at Doc. 82.) The Court also at that time dismissed all claims for defamation, finding that the allegedly defamatory statement was not published. This finding ended the case for Defendant McNamara. Defendant Law was voluntarily dismissed by Plaintiff at the hearing on June 6, 2005 (*see* Doc. 87), and, therefore, only Defendants Mickey Owen and Leslie Foote remain in the case.

### FINDINGS OF FACT

Having considered the evidence before the Court, the Court makes the following findings of fact:

1. James Boyd worked as a police officer for the City of Washington Park, Illinois, when he came to know professionally and assist Angela Hampt and her daughter, Sarah H.

2. Boyd assisted Hampt in obtaining an Order of Protection against Sarah's father, Matthew Howard.

3. Sarah H. has severe behavioral disorders which include self-aggression and aggression to others.

4. On December 30, 2002, the DCFS hotline received a call about potential abuse of Sarah H.

5. Sarah H. was taken into custody by DCFS on January 2, 2003, from the residence of her mother, Angela Hampt. Leslie Foote was a DCFS investigator from the Granite City Office who went to Hampt's home on that date. Mickey Owen was Foote's supervisor and was also present at the home on January 2, 2003.

6. Sarah H. told the investigators on January 2, 2003, that the bruises were caused by "James."

7. Angela Hampt denied on January 2, 2003, that Boyd had caused the bruises on Sarah H.

8. Foote and Owen based the DCFS case against Boyd on a brief interview with the child done on her way to the DCFS office.

9. DCFS reported to the Madison County State's Attorney's Office on January 2, 2003, that Hampt and Howard had been indicated numerous times for allegations ranging from medical neglect to bone fractures. Foote and Owen also knew at this time that there was an open investigation concerning alleged sexual abuse of Sarah H. by her father.

10. Additional information revealed that the child had severe head lice for several months, had no immunizations, and had never been to school.

11. Foote and Owen were offered the names of Daniel Knight, Yvonne Randazzo, and "Stephanie" as individuals who babysat Sarah H. Knight and Randazzo were briefly interviewed on January 2, 2003. "Stephanie" was never interviewed.

12. Foote was aware at the time of the January 2, 2003, investigation that the minor, Sarah H., had been hospitalized in November 2002 for a psychiatric evaluation after she threatened her mother with a knife. At the time of this admission, Sarah H. was diagnosed with post traumatic stress syndrome.

13. Owen and Foote made the decision to indicate Boyd for abuse on the very first day they took the minor child into custody.

14. Angela Hampt told DCFS that her daughter lacked credibility.

15. DCFS developed procedures to be followed in making indicated findings. Those procedures are outlined in the Policy and Procedure Manual for the Department of Children and Family Services under Procedure 300.50 regarding initial investigations. These procedures were in effect at the time of the investigation at issue.

16. DCFS procedure requires a detailed process with a clear purpose as stated to determine if there is a good faith indication of abuse or neglect warranting a formal investigation as stated in the purpose under 300.50(a). A "thorough" investigation is to be conducted under Rule 300.50(b).

## ANALYSIS

The Due Process Clause of the Fourteenth Amendment to the United States Constitution forbids a state to deprive a person of "life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. In this case, the interest implicated is Boyd's liberty interest in his employment. (*See* second amended complaint, Doc. 69; *see also Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001)).

The affirmative defense of qualified immunity "protects government officials from civil liability when performing discretionary functions so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome the defense of qualified immunity, a plaintiff "must first allege the deprivation of an actual constitutional right, and second, show that the right was clearly established at the time of the alleged violation." *Alvarado*, 267 F.3d at 652 (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).

In this case, Foote and Owen's investigation departed in substantial fashion from DCFS's own rules. Those rules are not looked to as the *source* of the constitutional right as Foote and Owen argue; instead, Boyd had an independent substantive right – a protected liberty interest – in employment as a police officer. *See Lawson v. Sheriff of Tippecanoe County, Indiana*, 725 F.2d 1136 (7th Cir. 1984) ("The concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession, or other calling."). While it is true that the Seventh Circuit's decision, *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005), was not issued until after the events at issue, DCFS's own rules and regulations imposed a duty to identify other possible explanations for the abuse. Owen and Foote ignored the mother's warnings about her daughter's veracity and their own knowledge of the minor's mental, emotional, behavioral, and learning issues. Foote and Owen failed to corroborate their statements through witness interviews and identify and document physical and medical evidence. They failed to develop an investigative plan that would identify multiple explanations for incidents of maltreatment and instead issued an indicated finding immediately. In these ways their investigation violated clearly established rights of which a

reasonable person would have known.

Finally, Owen's claim that he should be dismissed because he was not personally involved is without merit. Owen was at the home on January 2, 2003, when the child was taken into DCFS custody. He was Foote's supervisor and directly involved in the decision to issue an indicated finding. Boyd has shown an affirmative link between the alleged constitutional violation and Defendant Owen.

## CONCLUSION

Accordingly, the remainder of Defendants' motion for summary judgment (Doc. 70) is **DENIED**. The Clerk of Court shall **AMEND** the docket sheet to reflect the correct name of Defendant Owen as set forth in this Memorandum and Order.

This case is set for **JURY TRIAL** at 8 a.m. on **Tuesday, November 29, 2005**.

**IT IS SO ORDERED.**

DATED: 07/31/05

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge